UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NICOLE WOODBURY,  )<br>)<br>  *Plaintiff*     )<br>)<br>v.            )<br>)<br>CAROLYN W. COLVIN, Acting   )<br>Commissioner of Social Security, )<br>)<br>  *Defendant*    ) | No. 1:15-cv-09-NT |

### REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") appeal contends that the administrative law judge wrongly weighed the opinions of several medical sources and erred in relying on Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid"). I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2016, Finding 1, Record at 19; that she suffered from affective disorder/bipolar disorder and substance abuse disorder/cannabis

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 16, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

(marijuana) abuse v. dependence with ongoing current use, impairments that were severe but which, considered separately or in combination, did not meet or equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 19-20; that she had the residual functional capacity ("RFC") to perform work at all exertional levels except that she could understand and remember simple instructions, accomplish simple tasks on a consistent schedule to complete a workday and workweek, could interact with coworkers and supervisors but not the general public, and could adapt to occasional changes in the routine workplace, Finding 5, *id*. at 21-22; that she was unable to perform any past relevant work, Finding 6, *id*. at 24; that, given her age (28 on the alleged date of onset of disability, September 1, 2012), at least high school education, work experience, and RFC, and using the Grid as a framework for decision-making, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 25; and that, therefore, she had not been under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, August 20, 2014, Finding 11, *id*. at 26. The Appeals Council declined to review the decision, *id*. at 6-8, making it the final determination of the commissioner, 20 C.F.R. § 404.981, *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.   Discussion

### A.  Opinion of Treating Physician

The plaintiff contends that the reasons given by the administrative law judge for not giving "serious weight" to the opinions of Arthur Dingley, D.O., a treating psychiatrist, "ignore[] the evidence" and result in undue reliance on the opinions of state-agency reviewing psychologists, requiring remand. Itemized Statement of Specific Errors ("Itemized Statement") (ECF No. 13) at 5-6. In addition, she asserts, the administrative law judge impermissibly interpreted raw medical evidence, because the RFC that he assigned to the plaintiff does not correspond to the limitations assessed by Dr. Dingley or by Susan Lichtman, Ph.D., a state-agency reviewing psychologist. *Id*. at 6.

The administrative law judge recounted in his opinion the plaintiff's history with Dr. Dingley, quoting repeatedly from his treatment records. Record at 22-23. He addressed the opinions upon which the plaintiff apparently relies[2] as follows:

> In the wake of this data, then, as it concerns opinion evidence, the undersigned has considered a recent mental assessment by Dr. Dingley, but cannot give it serious weight (Exhibit 15F). Despite the psychiatrist's status as a treating provider, his report is neither contemporaneous nor consistent with the overall treatment record. More specifically, the doctor completed the assessment in July 2014, yet the record reflects no interaction between the claimant and the doctor

---

[2] The itemized statement only attacks the administrative law judge's reasons for discounting the opinions without saying what those opinions were or why giving them more weight would necessarily change the outcome of this claim.

> over the preceding 9 months[,] where her last appointment appears in October 2013 (Exhibit 11F/13), and after which, the claimant began therapeutic counseling with Sheila Hoyt, L.C.S.W. at Franklin Behavioral Health (Exhibit 11F/11), whom the claimant continues to see (Exhibit 14F). When questioned by the undersigned in this matter, counsel said at hearing that he had submitted all available medical evidence, including all records from Franklin Behavioral Health (testimony).
>
> Furthermore, Dr. Dingley's proposal that the claimant meets several listings does not coincide with his treatment data (Exhibit 15F). To wit, he suggests the claimant meets listings 12.04 as well as 12.06 (anxiety disorders) and 12.08 (personality disorders), yet his treatment notes contain no diagnoses of the two latter impairments (Exhibit 11F). He also proposes the claimant experiences marked functional limitations, citing said parameters extant since January 2013, when the clamant required hospitalization with suicidal ideation. Dr. Dingley summarized that because of this in-pat[i]ent stay, "[S]he has met severity requirements for medical dispositions indicated [12.04, 12.06 and 12.08] from December 2012" (Exhibit 15F/6). The undersigned finds this is merely a summary statement offered without quantifiable or corroborating medical evidence, and it contrasts sharply with his treatment records citing the claimant's "even keel" and stable mental status as noted above (Exhibit 11F).

Record at 23-24.[3]

The plaintiff challenges the administrative law judge's first stated reason for his assessment of Dr. Dingley's opinion, that the opinion is dated July 2014 when the last interaction between the plaintiff and Dr. Dingley took place in October 2013, *id*. at 23, by asserting that this reason

> ignores the evidence that Plaintiff received ongoing therapeutic counseling from Sheila Hoyt, LCSW, at Franklin Behavioral Health, the same medical facility at which Dr. Dingley practiced and treated Plaintiff, between October 2013 and July 2014.

Itemized Statement at 6. The administrative law judge did not ignore this evidence; he included it in the same sentence of his decision that begins with the challenged observation. Record at 24. Rather, the administrative law judge's conclusion is based upon what is *not* present in the record: any evidence that Dr. Dingley had reviewed Hoyt's treatment notes or was otherwise aware of the plaintiff's mental status at any time after October 2013, nine months before he filled out the form

---

[3] Dr. Dingley's opinion that the plaintiff met three specific Listings is an opinion on an issue that is reserved to the commissioner and, as such, may never be given controlling or greatest weight. *Connolly v. Colvin*, No. 2:14-cv-292-JHR, 2015 WL 1859011, at *5 (D. Me. Apr. 22, 2015).

4

setting out limitations that the plaintiff contends must be adopted by the administrative law judge. Applicable case law is to the contrary. *See, e.g., Cyphers v. Social Sec. Admin. Comm'r*, No. 1:13-cv-00177-NT, 2014 WL 2048197, at *4 n.4 (D. Me. May 19, 2014) (rejecting contention that one psychiatrist's assumption of care of plaintiff from another psychiatrist in same practice lengthened time that second psychiatrist should be deemed to have treated plaintiff) ; *Ferrante v. Astrue*, 755 F.Supp.2d 206, 210 n.2 (D. Me. 2010) (plaintiff's burden to present evidence that physician who diagnosed him in 2008 was aware of 1993 CT scan performed at same facility).

The plaintiff also challenges the administrative law judge's second reason for giving little weight to Dr. Dingley's opinions: that those opinions are inconsistent with the overall medical record and his own treatment notes. Itemized Statement at 6. Specifically, she asserts that this reason "ignores the treatment records of LCSW Hoyt, and the evidence of Plaintiff's psychiatric hospitalizations specifically referenced by Dr. Dingley[.]" *Id*. To the contrary, the administrative law judge cited the most recent entry in Hoyt's notes preceding the hearing, to the effect that the plaintiff asked to see Hoyt every three weeks instead of every two weeks and was "feeling confident with her skills and moods have stabilized[.]" Record at 24, quoting *id*. at 516. The administrative law judge's conclusion that this "indicates improvement" in the plaintiff's mental condition, *id*. at 24, cannot reasonably be characterized as erroneous.[4] The plaintiff's failure to cite any entry in Hoyt's treatment notes to support her argument makes it unnecessary to consider those notes further.

The administrative law judge did not ignore the single psychiatric hospitalization to which Dr. Dingley referred. *Id*. at 533. Rather, he stated that "[t]he claimant was hospitalized twice for

---

[4] The plaintiff cites no authority in support of her assertion that "[t]he request for less frequent counseling visits by Plaintiff in May 2014, standing alone, does not support the ALJ's decision not to give 'serious weight' to Dr. Dingley's opinion." Itemized Statement at 6. Moreover, this request does not stand alone as evidence supporting the administrative law judge's evaluation of that opinion.

5

psychiatric symptoms, in January and February of 2013," and refers to these hospitalizations as "two episodes of instability," one of which involved a drug overdose, and both of which resulted in improvement in the plaintiff's mental condition. *Id*. at 20, 22-23. He characterized the hospitalizations as "a brief period of escalated mental health symptoms in 2013, [which] resulted from certain situational events." *Id*. at 22.[5] Those situational events were the overdose and a break-up with her boyfriend. *Id*. at 22-23. The plaintiff does not cite any evidence contradicting this characterization, which appears to be reasonable on its face.[6]

The plaintiff appears to challenge, Itemized Statement at 6, the administrative law judge's assertion that Dr. Dingley's opinion that she met three Listings was "merely a summary statement offered without quantifiable or corroborating medical evidence[.]" Record at 24. She again refers to the records of Hoyt and the psychiatric hospitalizations in this regard. Itemized Statement at 6. Again, she does not cite any specific entries in those records, and it is not the role of the court on this appeal to comb through the record to determine whether the suggestion that Hoyt's records do provide quantifiable or corroborating evidence is supported. Further, Dr. Dingley does not refer to Hoyt's records, and, thus, the administrative law judge's observation cannot be deemed erroneous in that respect. I have already discussed the psychiatric hospitalizations in general,

---

[5] At oral argument, the plaintiff's attorney equated her hospitalizations with the "extended episodes of decompensation" that constitute one of the criteria of each mental impairment Listing. However, any hospitalization that lasted less than two weeks does not meet the regulatory definition of an episode of decompensation of extended duration. Listing 12.00(C)(4). The patient's psychiatric hospitalization at Central Maine Medical Center in January 2013 lasted three days, with an additional two days at Pen Bay Medical Center. Record at 294, 317. Her psychiatric hospitalization at Mid Coast Hospital lasted 10 days. *Id*. at 321. The record contains no evidence of any other psychiatric hospitalization. *See generally Simpson v. Commissioner of Soc. Sec.*, Civil Action No. 2:14-cv-1372, 2015 WL 1637477, at *7 (S.D. Ohio Apr. 13, 2015).

[6] Although the plaintiff does not mention Dr. Dingley's own notes in her discussion of this issue, the administrative law judge's finding that those notes are inconsistent with Dr. Dingley's opinion that the plaintiff met three mental impairment Listings is supported by the evidence. *See, e.g.,* Record at 467 (doing reasonably well while taking no prescribed medications, 8/23/13), 469 (bipolar disorder improved overall, 6/28/13), 470 (discontinuing all medication, 6/28/13), 473 (discontinued one psychiatric medication, 5/3/13). Significantly, Dr. Dingley never diagnosed the plaintiff during his treatment of her with an anxiety disorder (Listing 12.06) or a personality disorder (Listing 12.08), two of the three Listings that he later opined the plaintiff met.

which is all that is possible in the absence of specific citations to those records.  *See also Briggs v. Astrue*, Civil No. 08-05-B-W, 2008 WL 4849332, at *4 (D. Me. Nov. 6, 2008) (administrative law judge supportably rejected treating physician's RFC opinion on basis that report was cursory, fill-in-the-blank form  without citation to clinical observations or medical studies or testing to support conclusions).

With respect to the plaintiff's assertion, Itemized Statement at 6, that the assigned RFC "does not correspond to" limitations stated in Dr. Lichtman's report, and bearing in mind the established law in this district that an administrative law judge need not derive an RFC from the findings and opinions of a single medical evaluator, *see, e.g., Kaylor v. Astrue*, No. 2:10-cv-33-GZS, 2010 WL 5776375, at *3 (D. Me. Dec. 30, 2010); *Johnson v. Barnhart*, No. 03-166-B-W, 2004 WL 1529296, at *4 (D. Me. June 24, 2004), I do not discern such a lack of correspondence.  The RFC limits the plaintiff to simple instructions, simple tasks on a consistent schedule, interacting with coworkers and supervisors but not the public, and adapting to occasional changes in the routine workplace.  Record at 22.  Dr. Lichtman opined that the plaintiff was "able to work in 2 hour blocks performing simple tasks over the course of a normal workday/workweek[,]" and was "not able to work with the public but can work with coworkers and supervisors."  *Id*. at 80.  She also noted that the plaintiff's ability to carry out short and simple instructions was not significantly limited, and that her ability to respond appropriately to changes in the work setting was moderately limited.  *Id*. at 79-80.  These opinions appear to be quite consistent with the limitations set forth in the RFC.[7]  *See, e.g., Klimpel v. Colvin*, No. ED CV 14-1217-PLA, 2015

---

[7] When asked at oral argument to specify the ways in which the RFC did not correspond to Dr. Lichtman's stated limitations, the plaintiff's attorney mentioned only that the RFC refers to adapting to occasional changes in the workplace, which Dr. Lichtman said that the plaintiff could adapt to simple changes in the workplace.  While that is correct, Dr. Lichtman also stated that the plaintiff was "[m]oderately limited" in her ability to respond appropriately to changes in the work setting.  Record at 80.  The plaintiff's attorney did not explain why this single difference in terminology alone rendered the administrative law judge's explanation for his rejection of Dr. Dingley's opinions so deficient that remand is required.

WL 1608617, at *9 (C.D. Cal. Apr. 10, 2015); *Beebe v. Colvin*, No. 3:13CV2288, 2015 WL 1119775, at *18 (N.D. Ohio Mar. 11, 2015).

The plaintiff includes in this section of her itemized statement an attack on the administrative law judge's "finding that there is no objective evidence of Plaintiff's delusional thinking," Itemized Statement at 6, but that is not a reason given by the administrative law judge in support of his evaluation of Dr. Dingley's opinions. Rather, the observation appears in a paragraph beginning "[a]lso of note" in which only Hoyt's records are mentioned. Record at 24. In any event, the only evidence cited by the plaintiff to contradict this observation is her "own testimony before the ALJ[,]" Itemized Statement at 6, which is subjective evidence by definition. The plaintiff's attempt to render her own testimony objective by observing that "it is unclear whether the ALJ accepted the objective credibility of Plaintiff's testimony in this respect[,]" *id*., does not change this fact. Credibility is only a consideration with respect to subjective testimony.

The plaintiff is not entitled to remand on the basis of her arguments concerning Dr. Dingley's opinions.

### B.  Use of the Grid

The plaintiff contends that the administrative law judge's use of the Grid as a framework for decision-making in this case was improper because her RFC is distinguishable from those in First Circuit cases that held that the Grid may be so used only when a claimant's nonexertional impairments do not significantly interfere with the performance of a full range of unskilled work. Itemized Statement at 7. She asserts that "the impact of [her] nonexertional impairments upon the occupational base is unclear," apparently because the administrative law judge did not "define[] [them] in further detail . . . beyond his finding that Plaintiff is unable to perform her past work[.]" *Id*. at 7-8. This lack of clarity, she argues, requires remand. *Id*. at 8.

This argument is foreclosed by this court's decision in *Swormstedt v. Colvin,* No. 2:13-cv-00079-JAW, 2014 WL 1513347 (D. Me. Apr. 16, 2014). The relevant language from that case is the following:

> The administrative law judge may rely on the Grid as a framework where the claimant's non-exertional limitations have no more than a negligible effect on the unskilled occupational base. The specific limitations included in the plaintiff's RFC—understanding and remembering simple instructions, executing simple tasks, interacting with coworkers and supervisors but not with the public, and adapting to occasional changes in the workplace[]—are compatible with the use of the Grid as a framework for decision-making.

*Id*. at *6 (citations omitted).[8] The administrative law judge's use of the Grid does not provide a basis for remand.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

---

[8] This conclusion makes it unnecessary for the court to consider the contention of the plaintiff's attorney at oral argument that the First Circuit in *Garcia-Martinez v. Barnhart*, 111 Fed. App'x 22 (1st Cir. 2004), "wrongly . . . overstepped" its holding in *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520 (1st Cir. 1989).

Dated this 4th day of October, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge